United States District Court
Southern District of Texas
**ENTERED**
May 26, 2022
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOE MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-3716 |
| | § | |
| TEXAS FARM BUREAU, *et al.*, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

### ORDER

Joe Mitchell applied for to work as a sales representative with the Texas Farm Bureau in April 2019. Mitchell scored poorly on the standard aptitude test, but he convinced Texas Farm Bureau to allow him to retake the test. He received a perfect score. Texas Farm Bureau then proceeded with a month-long interview process, involving Mitchell, his wife, the Agency Manager, and the District Sales manager. In the end, Texas Farm Bureau did not offer Mitchell a job. Mitchell alleges that the Agency Manager expressed concern over his age during the interview process. Mitchell sues Texas Farm Bureau, Texas Farm Bureau Insurance Companies, Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, and Farm Bureau County Mutual Insurance Company of Texas, (collectively, "Texas Farm Bureau"), for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*., and Chapter 21 of the Texas Labor Code, also known as the Texas Commission on Human Rights Act. Texas Farm Bureau moves for summary judgment, arguing that Mitchell was not hired due to his lack of relevant experience and for providing a misleading resume, not because of his age.

Based on the pleadings; the motions, responses and replies; the applicable law; the summary judgment record; and the parties' briefs, the defendants' motion for summary judgment, (Docket Entry No. 31), is granted.  The motion to strike the surreply, (Docket Entry No. 40), is denied.  The motion to strike the exhibits in support of the motion for summary judgment, (Docket Entry No. 43), is denied.  The reasons are explained below.

## I.    Background

Mitchell applied for a sales representative position with Texas Farm Bureau in Waller County, Texas in April 2019.  (Docket Entry No. 39-1 at 2).  Mitchell was 58 years old at the time. (Docket Entry No. 39-1 at 4).  The sales representative posting explained that Texas Farm Bureau was "looking for motivated individuals to help grow our agency in Waller County and surrounding areas."  (Docket Entry No. 39-2).  There were no qualifications listed.  Mitchell submitted his application, which included his answers to a list of six screening questions and five demographic questions.  Mitchell answered "yes" to the question, "Have you had any previous sales training or experience?"  (Docket Entry No. 39-3 at 2).  There were no other questions about previous experience on the application.  (Docket Entry No. 39-3 at 2).

After Mitchell submitted his application on April 11, 2019, Doug Light, the Agency Manager for the Waller County agency, sent Mitchell a link to complete an online sales aptitude assessment called the Predictor of Potential.  (Docket Entry No. 31-2).  On the grading scale of one to five, Mitchell received a two.  (Docket Entry No. 31-2 at 29).  On that same day, Light emailed Mitchell and explained that his application would not be moving forward.  (Docket Entry No. 39-5 at 2).  Light included Mitchell's aptitude test results in the email.  (Docket Entry No. 39-5 at 2).  Mitchell called Light immediately and asked to take the aptitude test again and requested an interview.  (Docket Entry No. 39-6 at 4).  Light agreed to allow Mitchell to take the test again

and to give him an interview.  (Docket Entry No. 31-2 at 13, 69).  Mitchell completed the aptitude test a second time on April 23, 2019 and received a perfect score of five.  (Docket Entry No. 39-9 at 2).

Texas Farm Bureau alleges that Light realized during the first interview that Mitchell had limited overall sales experience and no direct experience.  (Docket Entry No. 39-6 at 4).  Light interviewed Mitchell a second time.  Following Texas Farm Bureau standard procedure, Light asked Mitchell "to complete prospecting surveys and to generate a prospect list of 100 individuals that may have insurance needs."  (Docket Entry No. 39-6 at 6).  Mitchell emailed Light on April 26, 2019, that he had "made great headway on the Project 100 list."  He explained, "By my count I have 100 filled out and I have many, many more names that I can add."  (Docket Entry No. 39-12 at 2).  On April 29, 2019, Mitchell emailed Light,  "Doug, called your cell phone and left a message. Just wanted to be sure you received my 100 list and ask you who my targets are for the surveys."  (Docket Entry No. 39-12 at 2).  Light interviewed Mitchell again on May 13, 2019 to discuss the surveys and the next steps.  (Docket Entry No. 39-6 at 4).  On May 23, 2019, Light was joined by his supervisor, Jon Sharp, the District Sales Manager, in the final interview.  Both Sharp and Light found Mitchell to be likeable, but they were concerned about his lack of prior experience and "lack of advancement" in other jobs.  (Docket Entry No. 39-6 at 4).

One week after his second and final interview, Mitchell called Light and asked whether Texas Farm Bureau had acted on his application.  Mitchell alleges that Light told him he was concerned about how the younger salespeople would react to having "'someone as old as [Mitchell]' working [alongside] them."  (Docket Entry No. 39-1 at 4).  The next day, Mitchell emailed Light:

> I was thinking about the concern you expressed regarding my age and what the younger agents would think. I can assure you that I won't make them feel too bad about their youth and inexperience 😊

(Docket Entry No. 31-2 at 96).  Light responded:

> I appreciate that. I am pushing for a decision. Sorry for the delay, but I will let you know what the powers that be decide.

(Docket Entry No. 31-2 at 95).

Light contends that he never expressed a concern about Mitchell's age.  He testified that he had spoken with Mitchell about how he "was looking forward to getting that -- that last position filled in the office so that -- and it would -- it would make some of those guys a little nervous because now we could focus on production and not so much recruiting."  (Docket Entry No. 39-4 at 8).  Light stated that "nothing was ever discussed about [Mitchell's] age."  (Docket Entry No. 39-4 at 8).  Texas Farm Bureau's position statement before the EEOC sets out a slightly different story.  The Farm Bureau explained that age did come up in the conversation between Light and Mitchell, but in a positive way:

> Mr. Light mused that some of the younger and less experienced Sales Representatives have grown complacent. Mr. Light opined that perhaps if someone older like Charging Party were hired, it would make the younger Sales Representatives "uncomfortable" in the sense that they would be shaken out of complacency and improve their performance. In other words, Mr. Light was suggesting that the hiring of someone older would be a positive contribution to the Sales Representatives of Respondent's Waller County operations.

(Docket Entry No. 39-6 at 5).

Light explained that he allowed Mitchell to proceed to the final stages of the interview process because "he had a lot of service experience, so -- you know, customer service is a big part of what we do," and he was "very personable" and a "likeable guy" who "acted like he wanted to work."  (Docket Entry No. 31-2 at 20-21).  Light explained that he "had some concerns, but they weren't so much that I wanted to stop, you know, the process with him." (Docket Entry No. 31-2

4

at 21).  Light explained that he was concerned about whether Mitchell was "desperate" for a job.
(Docket Entry No. 31-2 at 22).  Light was also concerned about the discrepancy between Mitchell's
statement on his resume that he was working as a general contractor when he was actually building
his own house.  (Docket Entry No. 31-2 at 21).  Light explained that he was concerned about
Mitchell's lack of direct sales experience, or at least "not recent [direct sales] experience."  (Docket
Entry No. 31-2 at 22).  Texas Farm Bureau also explained to the EEOC that because it was hiring
only one sales representative for the Waller office, it "needed to fill this position with someone
who had a background in commissioned sales and experience performing successfully in a sales
environment."  (Docket Entry No. 39-6 at 5).  Texas Farm Bureau also explains that had it "been
seeking more than one contract, it likely would have made an offer" to Mitchell.  (Docket Entry
No. 39-6 at 5).  Light also explained that although he was responsible for making the hiring
decision, Sharp had to approve it.  (Docket Entry No. 31-2 at 21).

Light's notes of one of Mitchell's interviews describe the pros and cons of hiring Mitchell.
(Docket Entry No. 31-2 at 100).  In the "pros" column, Light listed that Mitchell was likeable,
persistent, had customer-service experience, and has a "need for life insurance due to health issues
at this time."  (Docket Entry No. 31-2 at 100).  In the "cons" column, Light wrote that Mitchell
had "lack of direct commission sales experience," was "too persistent?? (Is he desperate for a
job?," "out of work since 8/18" and asked "does he really believe in life insurance, or just wants
the job?" (Docket Entry No. 31-2 at 100).  Light also noted: "Jon [Sharp] advised to pass"; that "I
have enough pool accounts for 1 agent"; and that the "[n]ext agent really needs to have more sales
experience – also concern for the lack of advancement in prior roles."  (Docket Entry No. 32-1 at
100).

About a week after Light made the comment to Mitchell about his age, Light left Mitchell a voicemail explaining that Texas Farm Bureau would not be offering him a position.  (Docket Entry No. 39-6 at 5).  Texas Farm Bureau has still not filled the sales representative position.  Light testified that "[w]e never found somebody that had enough sales experience to take on that role, what we were looking for. And then COVID happened."  (Docket Entry No. 31-2 at 26). In its position statement to the EEOC, Texas Farm Bureau explained that "[o]nce again, had Respondent had more than one position to offer a contract, Respondent may very well have contracted [Mitchell]."  (Docket Entry No. 39-6 at 7).

Mitchell sued the defendants for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and Chapter 21 of the Texas Labor Code, the Texas Commission on Human Rights Act ("TCHRA").

## II.    The Summary Judgment Legal Standard and Evidence

### A.    The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc)). "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleo Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (quotations omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). When the facts are undisputed, the court "need only decide whether those undisputed facts are

material and entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat.*

*Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

**B.     The Summary Judgment Evidence and Objections**

Texas Farm Bureau submitted the following evidence in support of its motion for summary

judgment:

- Joe Mitchell's application;

- an email about the invitation to complete assessment on April 11, 2019;

- Doug Light's deposition;

- Joe Mitchell's Predictor of Potential Results, dated April 11, 2019;

- an email from Doug Light with Mitchell's Predictor of Potential Results dated April 11, 2019;

- excerpts from Mitchell's deposition;

- an email from Light to Mitchell dated April 11, 2019;

- Mitchell's resume;

- Mitchell's application paperwork;

- Mitchell's confidential 360 Review;

- Mitchell's Predictor of Potential Results dated April 23, 2019;

- emails between Mitchell and Light on May 9, 2019;

- emails between Mitchell and Light on May 13 and 30, 2019; and

- Light's interview notes.

(Docket Entry No. 31-2).

Mitchell submitted the following responsive evidence:

- Mitchell's affidavit, (Docket Entry No. 39-1);

8

- Texas Farm Bureau's job posting, (Docket Entry No. 39-2);

- Mitchell's job application, (Docket Entry No. 39-3);

- excerpts from Light's deposition, (Docket Entry No. 39-4);

- an email from Light to Mitchell, dated April 11, 2019, (Docket Entry No. 39-5);

- Texas Farm Bureau's position statement to the EEOC, (Docket Entry No. 39-6);

- an email between Light and Mitchell dated April 11, 2019, (Docket Entry No. 39-7);

- emails between Light and Mitchell dated April 17 and 18, 2019, (Docket Entry No. 39-8);

- emails between Light and Mitchell dated April 23, 2019, (Docket Entry No. 39-9);

- Mitchell's Predictor of Potential Results, dated April 23, 2019, (Docket Entry No. 39-10);

- emails between Light and Mitchell dated April 23 and 25, 2019, (Docket Entry No. 39-11);

- emails between Light and Mitchell dated April 29, 2019, (Docket Entry No. 39-12);

- emails between Light and Mitchell dated May 1 and 9, 2019, (Docket Entry No. 39-13);

- emails between Light and Mitchell dated May 30, 2019, (Docket Entry No. 39-14);

- excepts from Mitchell's deposition, (Docket Entry No. 39-15);

- Texas Farm Bureau's answers and objections to Mitchell's first set of interrogatories, (Docket Entry No. 39-16);

- Mitchell's defalcation fund application, (Docket Entry No. 39-17);

- the declaration of Jeremy West, a former Texas Farm Bureau sales agent at the Waller office, (Docket Entry No. 39-18);

- the declaration of Travis Hance, a former Texas Farm Bureau sales agent at the Waller office, (Docket Entry No. 39-19);

- the declaration of Richard Ayala, a former Texas Farm Bureau sales agent in Harris County, (Docket Entry No. 39-20);

- the declaration of Adam Bryant, a former Texas Farm Bureau sales agent in Harrison County, (Docket Entry No. 39-21);

- the declaration of Danny Cathey, a former Texas Farm Bureau sales agent in Randall County, (Docket Entry No. 39-22);

- the declaration of Heather English, a former Texas Farm Bureau sales agent in Jones County, (Docket Entry No. 39-23);

- Terry Gardiner's declaration, a former Texas Farm Bureau sales agent in Callahan and Shackelford Counties, (Docket Entry No. 39-24);

- the declaration of Juan Gonzalez, a former Texas Farm Bureau sales agent in Cameron County, (Docket Entry No. 39-25);

- the declaration of Joshua Harris, a former Texas Farm Bureau sales agent in Henderson County, (Docket Entry No. 39-26);

- the declaration of Erin Hartgrove, a former Texas Farm Bureau sales agent in Harris County, (Docket Entry No. 39-27);

- the declaration of Joe Hawley, a former Texas Farm Bureau sales agent in Harris County, (Docket Entry No. 39-28);

- the declaration of Tanya Noriega, a former Texas Farm Bureau sales agent in Fort Bend County, (Docket Entry No. 39-29);

- the declaration of David Perez, a former Texas Farm Bureau sales agent in Nueces County, (Docket Entry No. 39-30);

- the declaration of Debra Sickels, a former Texas Farm Bureau sales agent in Hunt County, (Docket Entry No. 39-31);

- the declaration of Lacie Smith, a former Texas Farm Bureau sales agent in San Jacinto County, (Docket Entry No. 39-32);

- the declaration of Jennifer Thomason, a former Texas Farm Bureau sales agent in McLennan and Parker County, (Docket Entry No. 39-33); and

- the declaration of Austin Vass, a former Texas Farm Bureau sales agent in Smith County, (Docket Entry No. 39-34).

Mitchell objects to the the Texas Farm Bureau Exhibits D, E, H, J, and N as unauthenticated hearsay.  (Docket Entry No. 40).  Texas Farm Bureau need not authenticate evidence at the summary judgment stage if it can be authenticated at trial.  *See Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.").  And Texas Farm Bureau provided an affidavit from Light authenticating the exhibits.  (Docket Entry No. 45 at 8).  The motion to strike based on lack of authentication is denied.

Exhibit D is Mitchell's Predictor of Potential score and Exhibit E is an email exchange between Light and Mitchell about the score.  (Docket Entry No. 31-2 at 28, 35).  The court is not relying on these statements for their truth, but only as evidence of the parties' knowledge.  Exhibits H, J, and N are: Mitchell's resume with Light's handwritten annotations; a form with Light's notes about Mitchell's insurance needs; and Light's notes from his interview with Mitchell.  (Docket Entry No. 31-2 at 71, 78–81, 100).  These statements are admissible to the extent they show Light's present sense impressions.  Fed. R. Evid. 803(1).

The objections to the exhibits are overruled and the motion to strike is denied.

## III.    Analysis

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The Texas Act prohibits discrimination in employment based on "race, color, disability, religion, sex, national origin, or age."  See Tex. Lab. Code § 21.001.  The Texas Act was intended to "correlate 'state law with federal law in the area of discrimination in employment,'" so "we look to analogous federal precedent for guidance when interpreting the Act." *NME Hospitals, Inc. v.*

11

*Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) (quoting *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991)).

### A.      The Existence of an Employment Relationship

Texas Farm Bureau argues that Mitchell's claim fails as a matter of law because he applied to be an independent contractor, not an employee of Texas Farm Bureau.   Only  an  "employer" may be held liable under the ADEA.  29 U.S.C. § 630(b).  The Act defines an "employer" as "a person . . . who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year [and] any agent of such a person," and an "employee" as "an individual employed by any employer[.]"  *Id.* § 630.  A "person" under the ADEA includes corporations.   *Id.*   An independent contractor is not an "employee."   *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 753 (5th Cir. 1983) (the ADEA does not protect independent contractors because they are not employees).   To determine whether an employer-employee relationship exists, the Fifth Circuit applies a hybrid economic realities and common law control test.  *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas,* 5 F.3d 117, 118–19 (5th Cir. 1993).  "The right to control an employee's conduct is the most important component of this test."  *Id.* at 119. The Fifth Circuit applies a number of factors to determine whether the right to control exists, focusing on "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule."  *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015).   "The right to control an employee's conduct is the most important component of this test."  *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015).  "The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment."  *Id.*

Texas Farm Bureau points to Mitchell's employment application, which that that he was applying "to be contracted as an independent contractor."  (Docket Entry No. 31-2 at 74).  In its statement to the EEOC, the Texas Farm Bureau explained that Mitchell applied to be an independent contractor sales representative who would "manage[] his or her own day-to-day schedule, and [could] even hire and fire their own staff to assist them in their work."  (Docket Entry No. 39-6 at 7).

Mitchell points to the declarations of two former sales representatives at the Texas Farm Bureau Waller location.  (Docket Entry Nos. 39-18–19).  One representative, Jeremy West, explained that Light and Sharp told him that he would be able to set his own schedule, but in reality, Light controlled the hours that West was required to be in the office.  (Docket Entry No. 39-18 at 2).  Light required West to be in the office Monday through Friday from 9 a.m. to 5 p.m., so he had to meet with customers or visit properties outside regular business hours.  (Docket Entry No. 39-18 at 3).  Sales agents were also required to serve as the "Agent on Duty" one or two days each week, answering phone calls and helping other customers in the office.  (Docket Entry No. 39-18 at 3).  West was paid on a commission but about half of his work did not pertain to his own sales and was not compensated.  (Docket Entry No. 39-18 at 4).  West explained Texas Farm Bureau limits its agents to selling only Texas Farm Bureau policies or policies of its affiliates and restricts the software that agents use to do their work.  (Docket Entry No. 39-18 at 4–5).  As a result, West could process payments only in the office, adding to the hours he was required to spend at work.  (Docket Entry No. 39-18 at 4).  Light described the sales position to Mitchell consistent with West's description of his responsibilities—"general office work, answering phones, doing paperwork on the computer, making sales calls, meeting with customers, writing up

and processing their purchase, and doing pretty much everything except collecting payment."
(Docket Entry No. 39-1 at 3).

The second representative, Travis Hance, worked at the Waller agency during the same
period. In his declaration, he described the same work environment that West described. (Docket
Entry No. 39-19).

Mitchell also points to the declarations of 15 other sales representatives working at
different Texas Farm Bureau locations. These declarations were filed in support of an overtime
collective action against the Texas Farm Bureau in the U.S. District Court for the Western District
of Texas. (Docket Entry Nos. 39-20–34).

Texas Farm Bureau responds that there is no evidence that these other sales representatives
had personal knowledge about the position that Mitchell applied for, including whether it would
have been similar position to their positions. Texas Farm Bureau also points to Mitchell's
testimony that he did not know the other Texas Farm Bureau Sales representatives whose
declarations he relied on or have any personal knowledge about their working conditions or
compensation. (Docket Entry No. 31-2 at 42–54).

Texas Farm Bureau has pointed to evidence that the posting for the position Mitchell
applied for was for an independent contractor. A posting or title does not determine whether the
position is for an employee or an independent contractor. *Parrish v. Premier Directional Drilling,
L.P.*, 917 F.3d 369, 388 (5th Cir. 2019) ("Citing well-established precedent from our circuit, the
court, correctly, chose not to rely on any contractual agreement."). "[T]he focus is on economic
reality, not contractual language." *Id.* Mitchell has provided evidence that Texas Farm Bureau
hires and fires the sales agents, controls the policies that sales agents can sell and the software they
can use to sell them, requires the agents to do office tasks outside their sales roles, closely

supervises these daily tasks, mandates a specific work schedule, and expects the sales agents to do a significant amount of noncompensated work.  Neither party has submitted other evidence about the pay or benefits structure.

The present record is inadequate to permit the court determine whether, as a matter of law, the position Mitchell applied for was as an employee or independent contractor.  The restrictions on the sales agents' abilities to sell competing products weighs in favor of finding an employee relationship.  *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 344 (5th Cir. 2008).  *See also Haskett v. Percheron, LLC*, CV G-14-257, 2016 WL 1054396, at *4 (S.D. Tex. Mar. 9, 2016) (the worker's ability to offers their services to others supports that there was no employer-employee relationship).  The evidence shows that Texas Farm Bureau exercised significant control over its sales agents in the Waller office.  Mitchell has shown least factual disputes material to deciding whether the sales representative position was for an independent contractor or an employee that precludes summary judgment on that basis.

### B.    The ADEA and TCHRA Claims

Claims brought under the ADEA involving circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework.  *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).  As the claimant, Mitchell must make a prima facie showing that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."  *Harris*, 27 F.4th 1120, 1123 (5th Cir. 2022) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).  Texas Farm Bureau then must articulate a "legitimate, nondiscriminatory reason" for its

employment decision.  *Id.*  Finally, Mitchell must raise a genuine issue of material fact as to whether Texas Farm Bureau's proffered reason was merely a pretext for age discrimination.  *Id.*

To prevail under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).  The Texas Act requires a less demanding showing as a plaintiff can prove discrimination at the third stage by establishing that "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor."  *Goudeau*, 793 F.3d at 475.

### 1.    Mitchell's prima facie showing that he was discharged because of age

The parties dispute whether Mitchell must show that Texas Farm Bureau selected someone younger for the job.  Texas Farm Bureau argues that Mitchell cannot make a prima showing because the sales representative position remains open.   The parties cite to different recitations of the prima facie rule in the Fifth Circuit.  *Compare Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993) (describing the third element element as "the job remained open or was filled by someone younger") *with Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680–81 (5th Cir. 2001) ("another applicant not belonging to the protected class was hired").  *McDonnell Douglas* described the prima facie showing as requiring that "after his rejection, the position remained open and the employer continued to seek applicants from persons of [the] complainant's qualifications." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996) (quoting *McDonnell Douglas,* 411 U.S., at 802).   In *O'Connor*, the Court explained that for purposes of an ADEA clam, "the fact that one person in the protected class has lost out to another person in the protected class is [] irrelevant, so long as he has lost out *because of his age.*"  *Id.* at 312.  *O'Connor* shows that a prima facie showing of age discrimination does not require evidence that the position was

filled by a younger person.  Other courts have concluded that evidence of a younger replacement is one way, but not the only way, of showing age discrimination.  *See Hixson v. Houston Indep. Sch. Dist.*, No. 4:09-CV-3949, 2011 WL 3648104, at *13 (S.D. Tex. Aug. 17, 2011); *Gonzalez v. Koch Ref. Co.*, 43 F.3d 670 (5th Cir. 1994); *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015); *Bodkin v. Town of Strasburg, Virginia*, 386 F. App'x 411, 414 (4th Cir. 2010); *see also Bright v. GB Bioscience, Inc.*, No. CV H-06-1633, 2007 WL 9759953, at *3 (S.D. Tex. Nov. 20, 2007), *report and recommendation adopted*, No. CV H-06-1633, 2007 WL 9759951 (S.D. Tex. Dec. 4, 2007), *aff'd,* 305 F. App'x 197 (5th Cir. 2008) ("Filling the position with a non-minority may be one way to create such an inference, but it is plainly not the only way.").

Mitchell's claim does not fail solely because the position has remained unfilled.  But Mitchell still must make a prima facie showing that he was not selected because of his age.  *See Harris*, 27 F.4th at 1123.  Mitchell points to Light's comment that he "did not know how the younger salespeople would react to having 'someone as old as me' working [alongside] them." (Docket Entry No. 39-1 at 4).  Light made this comment a week before he told Mitchell that he was not selected for the position.  At the prima facie stage, a plaintiff can show discrimination based on comments showing "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker."  *Goudeau*, 793 F.3d at 475–76.  Mitchell points to the fact that Light was responsible for making the hiring decision and that Light did not dispute that he mentioned a concern about Mitchell's age when Mitchell emailed him about it.  (Docket Entry No. 31-2 at 95).  Viewing the evidence most favorable to Mitchell, Mitchell has made a prima facie showing that Light was concerned about hiring him because of his age.

### 2.      Mitchell's qualifications

Texas Farm Bureau argues that Michell has failed to make a prima facie showing that he was qualified for the sales representative position because he lacked sufficient direct sales experience.  Mitchell complains that the defendants have not pointed to any evidence about the qualifications for the position, let alone explained how Mitchell did not meet them.

A plaintiff must meet a job's qualifications to make a discrimination claim arising from the failure to be hired for that job.  Otherwise, ADEA would effectively guarantee a job to all those belonging to any protected class when they are discriminated against, whether or not they were qualified for that job.  *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001).  The Fifth Circuit has explained that a "review of our ADEA jurisprudence indicates that 'qualified' has a broadly colloquial meaning in this context; it refers to objective job qualifications (e.g., training, experience, and physical capacity), not 'essential functions' or any other term of art associated with the term's counterpart in the Americans with Disabilities Act."  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (citing *Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 349–50 (5th Cir. 2007) (the plaintiff had made out a prima facie case of ADEA discrimination by showing that he "possessed the same job qualifications when [his employer] terminated him as when [it] assigned him to [his last] position," as evidenced by the employee meeting "the objective criteria listed in a job posting" and holding a similar job title for two years).

In *Medina v. Ramsey Steel Co.*, the defendant argued that the plaintiff was not qualified for the job because he failed to meet the "substantial sales experience" requirement.  238 F.3d 674, 680 (5th Cir. 2001).  The district court granted summary judgment and concluded that the plaintiff had not made the prima facie showing that he was qualified for the job.  *Id.* at 681.  The Fifth Circuit reversed, explaining that an employer cannot "defeat an employee's claim via summary

judgment at the prima facie case stage by claiming that he failed to meet entirely subjective hiring criteria." *Id.* The court explained that while subjective criteria "may serve legitimate functions, they also provide opportunities for unlawful discrimination" because the criteria itself may be pretext for age discrimination. *Id.* (quoting *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 (5th Cir.1993)). "As we have indicated before, an employer may not 'utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged as discriminatory." *Id.* (quoting *Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1315 (5th Cir.1980)). At the prima facie stage, "it is inappropriate to decide as a matter of law that an employee is unqualified because he has failed to meet entirely subjective hiring criteria." *Id.* Mitchell must demonstrate only that he meets the objective hiring criteria at the prima facie case stage. *Id.* The subjective hiring criteria is relevant at the pretext stage. *Id.*

Mitchell points to the defendants' argument to the EEOC that they would have hired him if there were more positions available. (Docket Entry No. 39-6 at 5). Mitchell notes that the application did not have any criteria other than seeking motivated candidates. Mitchell points to his work history that included sales experience, his perfect score on the aptitude test the second time he took it, and that he made it through the interview process to the fourth-round with the District Sales Manager. Mitchell argues that this shows that he has at least made a prima facie showing that he was qualified.

The defendants point to evidence that Mitchell's prior experience was mostly in customer-service related positions rather than direct sales. Light noted during Mitchell's interview that he lacked "direct commission sales experience." (Docket Entry No. 31-2 at 100). Mitchell testified that he had had only one sales representative position from 2006 to 2010 when he applied for the Texas Farm Bureau sales representative position in 2019. (Docket Entry No. 31-2 at 38). His

resume is consistent.  (Docket Entry No. 31-2 at 38, 71–72).  Light testified that direct sales experience was a qualification for the sales representative position because it required "prospecting, finding customers, and taking [customers] through the sales process." (Docket Entry No. 31-2 at 22).  Light believed that Mitchell's sales experience mostly involved existing customers, but admitted that Mitchell had sales experience.  (Docket Entry No. 31-2 at 22).  Texas Farm Bureau has pointed to only subjective assessments of Mitchell's experience, which are not properly considered at the prima facie stage.  There is no evidence in the record of what objective sales experience Texas Farm Bureau was seeking, and Texas Farm Bureau has not pointed to any evidence of other objective qualifications that Mitchell was lacking.

Mitchell has made a prima facie showing that he was qualified for the job.

### 3.      The legitimate, nondiscriminatory reasons and pretext

Texas Farm Bureau has explained that it did not hire Mitchell because he did not have sufficient direct sales experience and some of the information in his materials about his prior work was misleading.  (Docket Entry No. 31-2 at 21–22).  Mitchell's resume says that he was a general contractor, which Texas Farm Bureau argues typically means a position requiring direct sales experience. In reality, Mitchell was building his own home and gaining no sales experience. (Docket Entry No. 31-2 at 21–22).  Texas Farm Bureau has met the burden of producing a legitimate, non-discriminatory reason for not hiring Mitchell.

In the context of a failure to hire claim, a plaintiff can demonstrate pretext by showing that either (1) the candidate "was clearly better qualified (as opposed to merely better or as qualified) than the employees who are selected" or (2) "the employer's proffered explanation is false or unworthy of credence." *Miller v. Novo Nordisk, Inc.*, No. 21-20237, 2021 WL 5913095, at *2 (5th Cir. Dec. 14, 2021).  Because another person has not been hired, Mitchell must show that Texas

Farm Bureau's explanation was "false or unworthy of credence." *Id.* "The pretext inquiry asks whether there is sufficient evidence 'demonstrating the falsity of the employer's explanation, taken together with the prima facie case,' to allow the jury to find that discrimination was the but-for cause of the termination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015). "The strength of the prima facie evidence may also be considered at the pretext stage." *Id.* at 477.

Mitchell argues that the Texas Farm Bureau's explanation is false because it has changed from Light arguing that Mitchell did not have direct sales experience—meaning "going out prospecting, finding a customer, and taking them through the sales process"—to arguing that Mitchell did not have "experience with commissions-based sales." (Docket Entry No. 39 at 20). "It is true that an employer's shifting reasons for its employment decision can raise an inference of pretext." *Miller*, 2021 WL 5913095, at *2. But Mitchell has not pointed to evidence that the direct sales experience and commission-based sales are different. Mitchell argues that "Light defined 'direct sales experience' as something fundamentally different than 'lack of commission-based sales experience." (Docket Entry No. 39 at 21). Mitchell has not shown how Light defined the terms differently or explained how the types of sales experience differ. Mitchell has not pointed to evidence showing that he had sales experience that was relevant to the sales representative role or that Texas Farm Bureau ignored such evidence. Nor has he pointed to other evidence showing that Texas Farm Bureau's conclusion that he lacked relevant experience was false or unreasonable. Texas Farm Bureau has explained that the experiences listed on Mitchell's resume did not provide sufficient experience for the job Mitchell applied for, and this was confirmed during the multiple interviews. Texas Farm Bureau submitted the interview notes, which noted a "lack of direct commission sales experience" and the need to hire at least one person

21

with sales experience.  (Docket Entry No. 31-2 at 100). The notes also reveal that Light was "on the fence" but Sharp advised him "to pass."  (Docket Entry No. 31-2 at 100).  Light testified that he found Mitchell "likeable" and "persistent."  (Docket Entry No. 31-2 at 20–21).  He explained "I had some concerns, but they weren't so much that I wanted to stop, you know, the process with him. When we got to this point, I kind of wanted my district manager's feedback."  (Docket Entry No. 31-2 at 20–21).

The evidence shows that Light was torn on hiring Mitchell but, with the advice of his district manager, decided not to offer Mitchell the job based on his lack of experience and because he may have misrepresented his sales experience.  Texas Farm Bureau has maintained that it would hire Mitchell if it had more spots available, which supports the inference that Mitchell's lack of experience, not his age, was the reason he was not hired for the only open sales representative position. "This is simply not a case where the defendant relies on nothing more than a[n] unexplained interview score that might be consistent with discriminatory intent."  *Joseph v. City of Dallas*, 277 F. App'x 436, 441 (5th Cir. 2008).

Mitchell argues that Light's testimony explaining that Mitchell did not have sufficient experience is not credible because Light denied making any comment about Mitchell's age, which was inconsistent with Texas Farm Bureau's statement to the EEOC.  Light testified that he "didn't discuss [Plaintiff's] age" at any point during Mitchell's interview process, nor did he ever become concerned about Mitchell's age.  (Docket Entry No. 39-4 at 11).  Texas Farm Bureau argued to the EEOC that Light meant the reference to Mitchell's age to be a positive attribute, inspiring the younger employees to work harder.  (Docket Entry No. 39-6 at 5).  Mitchell emailed Light to address Light's "concern" with his age, and Light responded that he "appreciated" the email. (Docket Entry No. 39-14 at 2).  This dispute about whether Mitchell's age came up and whether it

was a positive or a negative comment shows that there may have been a misunderstanding about the conversation, or it may even provide a basis to question Light's credibility.  But this dispute does not address Light's and Sharp's documented concerns with Mitchell's lack of prior experience and lack of advancement in other jobs.  Mitchell's resume provides support for those concerns.  (Docket Entry No. 31-2 at 71–72).  Even accepting Mitchell's interpretation that Light meant that Mitchell's age was a negative factor, this does not provide a basis to infer that Texas Farm Bureau's proffered reasons were false.

Even if Light had questionable credibility, Mitchell still "must produce sufficient evidence of implausibility to permit an inference of discrimination, not merely an inference that [the] proffered reason is false."  *Owens v. Circassia Pharms., Inc.*, No. 21-10760, 2022 WL 1515087, at *6, *10 (5th Cir. May 13, 2022).  Even if Mitchell had "established a prima facie case and set forth sufficient evidence to reject the [Texas Farm Bureau's] explanation," summary judgment is proper if no rational factfinder could conclude that the action was discriminatory.  *Id.* at *6. Mitchell has not pointed to sufficient evidence to reject Texas Farm Bureau's reasons, let alone to conclude that a rational factfinder could find that the action was discriminatory.  "The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from those decisions which are unlawfully motivated."  *Joseph*, 277 F. App'x at 443 (quoting *Bienkowski v. Am. Airlines, Inc.,* 851 F.2d 1503, 1507–08 (5th Cir. 1988)).  Mitchell has not shown, under either the but-for standard in the ADEA or the motivating-factor standard in the TCHRA, that there is a factual dispute material to determining whether Texas Farm Bureau's reasons were pretextual.

## IV.   Conclusion

The motion to strike the surreply, (Docket Entry No. 40), and the motion to strike the summary judgment exhibits, (Docket Entry No. 43), are denied.  Texas Farm Bureau's motion for summary judgment, (Docket Entry No. 31), is granted.   All claims are dismissed with prejudice. Final judgment is entered by separate order.

SIGNED on May 26, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge